UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| IN RE | ) | |
|---|---|---|
| | ) | |
| WARREN AND KAREN BECHTOLD, | ) | Case No. 602-63950-fra7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DAVID F. WURST, TRUSTEE, | ) | Adv. Proc. No. 03-6408-fra |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ED NIEMI OIL CO.,INC., | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

FACTS

Prior to May 2001, Debtor Warren Bechtolt was the sole shareholder of Country Grocers, Inc. Country Grocers operated a small store and gas station in Astoria under various assumed business names, including Landwehrs Country Grocer. The business premises was owned by Defendant Ed Niemi Oil, Inc. Defendant is wholly-owned by Debtor Warren Bechtold's mother. By the time of

Memorandum Opinion - 1

the events we are concerned with here, Defendant, which supplied the station's inventory, was owed approximately $200,000.

By early May of 2001, Mr. Bechtolt decided to quit the grocery business and move to Ashland to pursue other interests. He arranged with the Defendant to turn over the assets of the business in return for a $53,000 credit against amounts owed. The credit was noted on the Defendant's books on May 5, 2001.

Defendant received the keys to the business premises on May 5, and took control of the inventory and equipment at that time. Mr. Bechtolt left town, and the business was run by an employee of the store.

By mutual consent, the parties treated July 9 as the "official" date that Ed Niemi Oil took over Country Grocers' payroll and otherwise began running the business. Steps such as taking over the payroll, applying for an OLCC permit, and similar tasks were performed in July.

According to the Debtors' statement of affairs, Country Grocers, Inc. was dissolved in July. Also at that time, Mr. Bechtolt prepared a bill of sale purporting to convey inventory, equipment, fixtures and other personal property from Country Grocers to the Defendant. The Debtors filed a petition for relief under chapter 7 on May 29, 2002.

The Trustee filed this action, seeking avoidance of Debtor's transfer of business assets as preferential under Code § 547(b),

Memorandum Opinion - 2

and recovery from Defendant of the value of the transferred assets.

Defendant and Plaintiff entered into a Pre-Trial Order by which it was stipulated that Defendant was an insider as that term is defined at § 101(31). The parties also stipulated to all other elements of a preferential transfer, excepting the requirement at § 547(b)(4)(B) that an avoidable transfer to an insider be made within one year of the petition date: Defendant claims that the transfer was made outside the one-year period. A trial was held on March 9, 2005 and evidence was taken. At the conclusion of the trial, the matter was taken under advisement.

ISSUES

Did the completed transfer occur on May 5, 2001 as argued by Defendant, putting it outside the purview of Code § 547(b), or on July 9, 2001 as Trustee contends?

DISCUSSION

It is noteworthy that the assets transferred belonged not to the Debtors, but to Country Grocers, Inc. When this was pointed out to Plaintiff's counsel at trial, she in turn pointed out that the parties had agreed that the transfer was made for Defendant's benefit, that the Defendant was a creditor of the Debtors, and that the transfer was a transfer of an interest of the Debtors in property. The parties' stipulation as to questions of fact is binding on the court. See H. Hackfeld & Co. v. U.S., 197 U.S.

Memorandum Opinion - 3

442 (1905); Gander v. Gander, 250 F.3d 606, 609 (8th Cir. 2001). For purposes of this discussion, the Debtors and the corporation are interchangeable.

As to the property transferred, Plaintiff has abandoned his claim for intangible values such as goodwill. What was actually transferred was $24,250.17 in groceries and similar inventory, and equipment valued at $34,219; for a total of $58,469. The gasoline was supplied on consignment and remained the Defendant's property throughout. While the consignment was not recorded, it is clear that the Defendant recovered possession of its consigned goods in May, outside the preference period.

### Transfer Defined

A transfer is defined at Code § 101(54) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

"When a transfer is complete and what constitutes a transfer is a matter of federal law, but defining the specific interest in property is a 'creature of state law'." Biase v. Congress Financial Corp., 372 F.3d 510, 516 (3d Cir. 2004)(citing Barnhill v. Johnson, 503 U.S. 393, 398 (1992)). For purposes of bankruptcy preference law, "[a] transfer of a fixture or property other than real property is perfected when a creditor on a simple

Memorandum Opinion - 4

contract cannot acquire a judicial lien that is superior to the interest of the transferee."  Code § 547 (e)(1)(B).  This requires an examination of state law to determine when an interest in property is put beyond the reach of creditors.

A sale is defined as "[t]he transfer of property or title for a price."  Black's Law Dictionary 1364 (8th ed. 2004)(citing *inter alia* UCC § 2-106(1)).  An absolute sale is "[a] sale in which possession and title to the property pass to the buyer immediately upon the completion of the bargain."  Black's Law Dictionary, *supra*. An absolute sale would put the property transferred beyond the reach of a judgment creditor on a simple contract.[1]  On May 5, 2001, Debtor agreed to sell the assets of the business to the Defendant for $53,000.  Defendant made "payment" for the assets by issuing a credit to Debtor on May 5, and Defendant took possession of the property on the same date.  It follows that, on May 5, there was a completed bargain.  The Trustee's position requires a finding that while possession of the property may have been transferred on May 5, title to the assets was not transferred, and the transfer made complete, until July 9 when a bill of sale was prepared and the final actions necessary to complete the takeover of the business were taken.
/ / / / /

---

[1] For purposes of this discussion, we must assume that the sale was made for a reasonably equivalent value, as the trustee is not alleging a fraudulent transfer under state or federal bankruptcy law.

Memorandum Opinion - 5

Date of Transfer

The Trustee argues that this was a "multi-step transaction" and cites to Barnhill v. Johnson, 503 U.S. 393 (1992) for the proposition that in such a transaction, the transfer date under bankruptcy law is the date when the last part of the transaction was completed. Barnhill involved a payment by check. The court held that the transfer takes place on the day the drawee bank honors the check, rather than on the date the check is delivered. It explained that prior to payment of the check by the drawee bank, the debtor retains control of the funds in the account, which could be transferred to third parties.[2] The Trustee also cites to a bankruptcy case from Montana, Walters v. M & H Rentals, 61 B.R. 426 (Bankr. D. Mont. 1986), in which a judgment creditor had garnished the debtor's vendor interest in a land sale contract in Oregon. The debtor's ownership interest in the contract was thereafter sold at a sheriff's sale to satisfy the creditor's judgment. The chapter 11 debtor filed an adversary proceeding to avoid the transfer of assets as preferential and to recover the value of the assets so transferred. Stating that there can be multiple transfers within and without the transfer period, the court held that there were two transfers which occurred during the preference period: issuance and delivery of a writ of garnishment to the vendee in the land sale contract

---

[2] And, incidently, could be levied on by a judgment creditor.

Memorandum Opinion - 6

(entitling the creditor to one or more instalment payments as they came due), and sale by the sheriff of the debtor's ownership interest in the contract. Both were held to be avoidable transfers. Id. at 430.

Both cases cited by the Trustee answer the question, for the two situations presented, of when a transferred asset is put beyond the reach of a judgment creditor, i.e. when is ownership (or title) of the asset transferred, or a security interest perfected. The cited cases cannot, however, be read to hold that in a "multi-step transaction," one cannot find that a completed transfer has been made until the final step of the transaction is complete. As the present case involves neither a payment by check nor garnishment and sale under state law, the specific holdings of the two opinions cited are not relevant to the situation presented.

Under Oregon law, must a bill of sale or some other type of transfer document be prepared in a sale of personal property for ownership and title to transfer? For certain types of personal property, such as motor vehicles, one could argue that the answer is yes. Generally, however, the answer is no, especially where, as here, payment was made and possession taken by the transferee. Oregon law provides, with respect to the sale of goods:

> Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of goods . . . and even though a document of

Memorandum Opinion - 7

>     title is to be delivered at a different time or place.
>     . . .

ORS 72.4010(2). A "document of title" is defined at ORS 71.2010(15) as including a

> bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

Under the definition above, a bill of sale does not constitute a "document of title." Even if it were to constitute a document of title, however, there is no evidence in the record of an explicit agreement withholding title to the goods transferred until such time as a bill of sale is executed. The "physical delivery of goods" occurred when the Debtor transferred possession and control of the equipment and inventory to the Defendant. The transfer of those assets was complete at that time, notwithstanding that additional matters concerning the operation of the business were left to be accomplished at a future date. The bill of sale functioned merely as an acknowledgment that a transfer had been made.

/ / / / /

/ / / / /

Memorandum Opinion - 8

CONCLUSION

Ownership and title to the inventory and equipment was transferred to the Defendant on May 5, 2001 when payment was made and possession taken by the Defendant.  The completed transfer of assets occurred on that date for purposes of Code § 547(b).  As that date is more than one year prior to the petition date, judgment must be rendered for the Defendant. A form of judgment will be entered consistent with this Memorandum Opinion.

FRANK R. ALLEY III
Bankruptcy Judge

Memorandum Opinion - 9